## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

| | | |
|---|---|---|
| **TINA MYERS** | * | Civil Action No.: |
| 34 Oak Grove Road, Apartment D | * | |
| Middle River, Maryland 21220 | * | |
| *Resident of Baltimore County* | * | |
| | * | |
| | * | |
| Plaintiff, | * | Class/Collective Action |
| | * | |
| v. | * | |
| | * | |
| **KENNEDY KRIEGER INSTITUTE, INC.** | * | |
| 707 North Broadway | * | |
| Baltimore, Maryland 21205 | * | <u>Jury Trial Requested</u> |
| | * | |
| Serve:  James M. Anders, R.A. | * | |
|        707 North Broadway | * | |
|        Baltimore, Maryland 21205 | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>COMPLAINT FOR WAGES OWED</u>

TINA MYERS, Plaintiff, through her undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits her Complaint, on behalf of herself and all those similarly situated, against KENNEDY KRIEGER INSTITUTE, INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, interest, liquidated damages, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Ann.

Code, Labor & Employment, §§ 3-501, *et seq.* (hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

Defendant is in the business of providing various forms of healthcare. This includes inpatient and outpatient treatment, as well as services in the community. Defendant also provides school based programs for children and adolescents with physical and mental disabilities.

Defendant is affiliated with Johns Hopkins University, with whom it conducts research. Neurological and musculoskeletal disorders, new interventions and early diagnosis are the focus of Defendant's studies.

For purposes of providing its health services, Defendant maintains offices throughout the state of Maryland. Plaintiff's duties were performed at one (1) of Defendant's physical therapy facilities in Baltimore.

Plaintiff's title was that of Care Center Specialist, in which she performed clerical work. This primarily entailed processing billing paperwork and maintaining the schedules of Defendant's therapists. Checking patients in and out of appointments was another one of Plaintiff's duties.

Although Plaintiff was only supposed to work no more than forty (40) hours each week, she consistently worked far in excess of this schedule. In order to keep up with her assignments, Plaintiff was required to work overtime consistently. This was primarily due to understaffing, which forced Plaintiff to assume a voluminous workload. This made it impossible for Plaintiff to complete all of her tasks during her scheduled shifts.

As a result, Plaintiff consistently arrived to work and began working prior to when her shifts were scheduled to begin.  Plaintiff's workload also resulted in her having to stay past the times her shifts were scheduled to end.  However, to prevent paying Plaintiff overtime, Defendant prohibited Plaintiff from clocking in before her shifts were scheduled to start.  Defendant also failed to compensate Plaintiff for the work she performed after her shifts were scheduled to end.  Defendant failed altogether to properly compensate Plaintiff for the overtime hours she worked.

There is no bona fide dispute that Plaintiff is entitled to compensation at a rate not less than "time and a half" her regular hourly rate for all hours worked over forty (40) in a workweek.  Plaintiff's duties did not exempt her from the overtime requirements of the FLSA or MWHL.  Defendant refused to allow Plaintiff and other similarly situated employees to accurately record their hours worked.  This was for the sole purpose of evading both Federal and State wage laws.  These circumstances make clear that Defendant's actions were willful and intentional.  Defendant is currently engaged in this unlawful activity.

## THE PARTIES

1.      Plaintiff Tina Myers (hereinafter, "Myers" and/or "Plaintiff") is an adult resident of Baltimore County, Maryland.

2.      Defendant Kennedy Krieger Institute, Inc. (hereinafter, "KKI" and/or "Defendant") is a non-profit institute that operates in the special needs medical industry.  KKI is primarily engaged in the business of providing specialized healthcare to children and adolescents.  These patients suffer from physical and/or mental disabilities.

3

3. Defendant competes with for-profit companies that offer many of the same services. Defendant competes with companies that provide outpatient physical therapy, physical rehabilitation, special education programs and social rehabilitation services.

4. Defendant operates a total of nineteen (19) facilities in the state of Maryland. These nineteen facilities (19) offer a wide range of services. They are all aimed towards the common goal of providing healthcare.

5. Defendant's primary office is located at 707 North Broadway, Baltimore, Maryland 21205. Upon information and belief, the unlawful practices described herein are implemented and encouraged at all of Defendant's offices.

6. Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL. Defendant provides services to individuals who reside outside of the state of Maryland.

7. Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00). As such, Defendant is subject to the FLSA, MWHL and the MWPCL.

8. At all times relevant to this Complaint, based on the duties that Plaintiff performed, Plaintiff was engaged in interstate commerce.

9. Plaintiff worked for Defendant who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

10. At all times relevant, Plaintiff and others similarly situated worked as non-exempt employees for Defendant.

11. From approximately August 11, 2011 to December 31, 2012, Plaintiff was employed with Defendant and held the title of Care Specialist I. From approximately January 1,

2013 to November 21, 2015, Plaintiff was employed with Defendant and held the title of Care Center Specialist II (hereinafter, collectively referred to as "Specialist"). For the entirety of her employment, Plaintiff's duties were performed at Defendant's facility located at 801 North Broadway, Baltimore, Maryland 21205.

12.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including the schedules of Plaintiff and other similarly situated employees.

13.     Defendant was actively engaged in the management and direction of Plaintiff and others similarly situated.

14.     Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and others similarly situated.

15.     Defendant had the authority to control Plaintiff's tasks and the tasks of others similarly situated.

16.     Defendant had the power and authority to change the course of Plaintiff and other similarly situated employees' duties.

17.     Plaintiff and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

18.     Defendant made all decisions relating to Plaintiff and other similarly situated employees' rate and method of pay.

## JURISDICTION AND VENUE

19.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

20.     Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367 (a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, in which Plaintiff's federal claims are based.   Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of State law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367 (c).

21.     Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Maryland.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

22.     Plaintiff and other similarly situated employees were hired by Defendant to assist its physicians, therapists and other medical professionals.   Plaintiff and others similarly situated were hired to perform clerical and administrative office work.   At the time of hire, Plaintiff was directed to complete her duties at Defendant's 801 North Broadway office.   Plaintiff was staffed in Defendant's physical therapy unit.

23.     During her employment, Plaintiff held the titles of Care Center Specialist I and II (hereinafter, collectively referred to as "Specialist").   She was primarily tasked with greeting patients, processing billing paperwork and maintaining the schedules of Defendant's therapists.

24.     Plaintiff was stationed at the front desk, which adjoined the waiting room. Plaintiff was tasked with ensuring patient satisfaction.   She had to consistently maintain a pleasant disposition and accommodate patient requests.   Timely completion of a patient's intake was another one of Plaintiff's primary duties.

25.     Plaintiff was also responsible for checking patients in upon their arrival.   This entailed gathering needed documents and assisting patients with the completion of paperwork.

26.     One of Plaintiff's focuses was to ensure minimal wait times.   When a patient waited for an excessive period, Plaintiff was responsible for making the therapists or a management official aware of that fact.

27.     Plaintiff was also charged with scheduling appointments.   Plaintiff was regularly given the times that the therapists were available.   Plaintiff was instructed to schedule patients during these timeframes.

28.     Plaintiff was also responsible for completing a large amount of paperwork.   This included documents related to patient charts, in addition to discharge forms.   Plaintiff also had to prepare documents regarding patient evaluations.   This primarily involved paperwork related to patient referrals.   Plaintiff was charged with obtaining these documents, in addition to filing these documents appropriately.

29.     Plaintiff also had to procure insurance documents.   If a co-pay was required from a patient, Plaintiff was responsible for obtaining it.   Plaintiff was then required to enter the relevant information into Defendant's software.   This included the patient's unique code, the method of payment, all pertinent insurance information and the amount of the co-pay.   Plaintiff was then required to print and retrieve the receipt originated by Defendant's software.   One copy of the receipt was provided to the patient and the other was placed in the patient's file.

30.     Plaintiff was also responsible for preparing and printing labels that were required for each patient file.   Plaintiff had to attach the labels to each file as well.   These labels included the patient's name, date of birth, KKI number and account number.

31.     Plaintiff was also charged with entering billing information.  Following the time that a patient checks in, Plaintiff would prepare a bill in reference to each patient.  The therapists were responsible for filling out the bills during or after the patient's appointment.

32.     Once the bill was completed by the therapists, Plaintiff would enter the information into Defendant's software.  Once the information had been entered, Plaintiff would file a copy in the patient's file.  Plaintiff was also responsible for sending another copy to Defendant's accounting department.  Plaintiff would also keep another copy for her records in case there was a discrepancy between Defendant's software and the actual bill.

33.     Plaintiff was also responsible for answering the phones.  This primarily entailed answering questions from patients and/or the general public.  Defendant's therapists would also call for status updates.  This would typically require Plaintiff to retrieve information related to patients and/or scheduling.

34.     Plaintiff had no managerial authority.

35.     Plaintiff performed no analysis.

36.     Plaintiff did not interpret any information.

37.     Plaintiff did not write any reports.

38.     Plaintiff did not supervise any of Defendant's employees.

39.     Plaintiff did not have any input or discretion in regard to her assigned tasks.

40.     Plaintiff satisfied the requirements of her job and adequately performed her duties to benefit Defendant.

41.     Plaintiff completed all of her duties to the extent required by Defendant.

42.     For the aforementioned work, from the time she was hired until approximately December 31, 2012, Plaintiff received bi-weekly payments reflecting an hourly rate of thirteen dollars and seventy-five cents ($13.75) per hour.

43.     Plaintiff subsequently received a raise and from approximately January 1, 2013 to December 31, 2013, Plaintiff received bi-weekly payments reflecting an hourly rate of approximately fifteen dollars ($15.00) per hour.

44.     Plaintiff received another raise and from approximately January 1, 2014 to December 31, 2014, Plaintiff received bi-weekly payments reflecting an hourly rate of approximately sixteen dollars ($16.00) per hour.

45.     Following this, Plaintiff received another pay increase.  From approximately January 1, 2015 to the end of Plaintiff's employment, she received bi-weekly payments of seventeen dollars and eighty-five cents ($17.85) per hour.

46.     During all times relevant to the Complaint, Plaintiff worked as an hourly employee for Defendant.

47.     Upon the commencement of her employment, Plaintiff was advised that her schedule was to be from 8:30 a.m. to 5:00 p.m. Monday through Friday.  Plaintiff was also promised a sixty (60) minute lunch break during each shift.  However, Plaintiff worked far in excess of her scheduled hours.

48.     During many pay periods, Plaintiff worked well over forty (40) hours in a workweek.  This occurred for the full duration of Plaintiff's employment with Defendant.

49.     The requirement that Plaintiff work overtime resulted substantially from the expansion of Defendant's business.  During Plaintiff's tenure, the number of patients Defendant serviced significantly increased. With this increase, Plaintiff's workload grew immensely.

However, Defendant failed to hire additional employees to assist Plaintiff with her clerical duties. Defendant also never reassigned any of her duties.[1]

50.     For instance, as Defendant's business grew, the number of patients that Plaintiff had to schedule increased dramatically. When her employment began, Plaintiff recalls only having to schedule approximately fifteen (15) appointments each day. By the end of her employment, Plaintiff was tasked with scheduling as many as sixty (60) to eighty (80) appointments per day. These conditions resulted in Plaintiff having to regularly work overtime.

51.     Defendant informed Plaintiff that it was her responsibility to ensure that the schedules for the therapists were filled. It was a daily requirement that a therapist's appointment book reach a capacity of at least ninety percent (90%). In order to accomplish this, Plaintiff had to constantly make calls to regular patients. This also entailed Plaintiff having to process calls from new patients. Upon being contacted by new patients, Plaintiff was also required to perform an initial screening. Performing intakes over the phone was often very time-consuming.

52.     As part of her scheduling duties, Plaintiff was also tasked with following-up with patients. This primarily occurred when they missed or cancelled an appointment. Patients would often request that their appointments be rescheduled. The frequency of missed, cancelled and/or rescheduled appointments caused rescheduling to become one of Plaintiff's primary tasks.

53.     Due to the totality of Plaintiff's scheduling duties, Plaintiff spent a large part of her day on the phone. Consequently, Plaintiff was unable to perform many of her other assignments during her scheduled hours. Plaintiff often had no choice but to put them off until the end of her day. This resulted in Plaintiff having to stay at work well past the time her shifts

---

[1] As Defendant's business expanded, Plaintiff can recall Defendant hiring additional employees to assist in other units. For instance, at the time that her employment ended, Plaintiff can recall Defendant's occupational therapists unit being staffed with two (2) administrative workers. These employees performed duties similar to Plaintiff and were specifically hired to provide support. However, Defendant failed to hire additional employees to assist Plaintiff with her duties. Within the physical therapist unit, Plaintiff was the only Specialist on staff.

were scheduled to end.  These conditions also required Plaintiff to have to come in early.  These circumstances contributed to the regular overtime that Plaintiff worked.

54.     Plaintiff would also regularly receive phone calls from therapists and treating physicians (collectively, referred to as "clinicians").  These clinicians would regularly request status updates and other patient related information.  Modifications to the schedule were also frequent requests made by the therapists and doctors.  The high volume of these calls prevented Plaintiff from completing her other assignments during her scheduled hours.  These circumstances also frequently required Plaintiff to work overtime.

55.     Therapists would also often "go missing" during times that they were scheduled to meet with patients.  When this occurred, it was required that Plaintiff physically locate the therapist.[2]  Toward the end of Plaintiff's employment, there were approximately twenty-four (24) physical therapists on staff.  Thus, keeping up with all of their whereabouts became an extremely complicated and arduous task.  This task consistently pulled Plaintiff away from her regular assignments.  This in turn resulted in additional overtime hours being necessary.

56.     Plaintiff was also the only employee available to assist certain patients with special needs.  For instance, when patients had problems with mobility, Plaintiff was responsible for escorting them to and from their vehicles.  This occurred regularly, reducing the time that Plaintiff had to complete her other office tasks.  This too forced Plaintiff to work hours outside of her normal schedule in order to complete her work.

57.     Plaintiff's billing duties further contributed to the overtime hours she worked.  This was in large part due to the habitual tardiness of Defendant's therapists.  Defendant's

---

[2] Defendant had originally issued its therapists pagers.  This enabled Plaintiff and other similarly situated employees to alert therapists when a patient arrived.  However, in an effort to avoid costs, during Plaintiff's employment, Defendant reclaimed all of its therapists' pagers.  This forced Plaintiff to manually track down therapists when a patient arrived.

polices required that its therapists submit bills regarding patient treatment on the same day that the therapist treated a patient. Plaintiff could only process the bills once a therapist completed and returned the bills to her.

58.    Therapists would routinely fall behind schedule. This would lead them to hand bills to Plaintiff in large stacks at a time. These stacks typically consisted of bills that should have been handed to Plaintiff several days, or sometimes even several weeks earlier. This was almost always the case during the latter part of each month, as the office had a monthly deadline for all bills to be entered. A combination of all of the above caused Plaintiff to regularly work hours outside of her typical schedule.

59.    The therapists would also routinely give the bills to Plaintiff at the very end of her workday. Plaintiff would often prepare the bills after business hours in order not to fall further behind schedule. This contributed to Plaintiff having to consistently stay past the time that her shifts were scheduled to end. These conditions also caused Plaintiff to work overtime frequently.

60.    Keeping track of the billing paperwork was also extremely time-consuming. This was primarily due to the manual labor associated with preparing the billing packets to be mailed. There could be numerous pieces of paper associated with each packet. Having to organize and pack the required documents into envelopes further contributed to the overtime hours that Plaintiff worked.

61.    As described above, Plaintiff was also responsible for printing and preparing labels related to each patient's file. Once prepared, Plaintiff had to ensure that the labels were applied correctly. Application of the labels had to conform to Defendant's protocols. This was a tedious process, and very time-consuming. Due to the large number of labels that Plaintiff had

to regularly assemble, this became another one of Plaintiff's laborious task. This task further contributed to the overtime hours that Plaintiff worked.

62. The high volume of patients scheduled throughout the day further contributed to Plaintiff having to work overtime. With such a large number of patients came additional duties. For instance, Plaintiff was routinely taken away from her other assignments in order to process co-pays. Defendant demanded that Plaintiff drop whatever she was doing whenever there was a co-pay to accept. This caused Plaintiff to regularly fall behind on her other assignments. In order to perform her duties to Defendant's satisfaction, Plaintiff was required to submit all of her assignments on time. Plaintiff was constantly interrupted throughout her day in order to process co-pays. This made it difficult for Plaintiff to complete her other assignments during her scheduled hours. These circumstances contributed to the substantial amount of overtime that Plaintiff worked.

63. Plaintiff was also required to enter information regarding the co-pays into Defendant's software. The information entered required the specific client code Defendant issued to each patient. Plaintiff was responsible for printing receipts in regard to this information. Plaintiff also had to physically file all paperwork associated with the co-pay into a client's file. All of these tasks were extremely time-consuming. The data entry, combined with the filing, caused Plaintiff to work overtime on a regular basis.

64. Due to her multiple assignments, Plaintiff regularly arrived to work prior to when her shifts were scheduled to begin. However, Defendant's agents demanded that Plaintiff work off the clock. Plaintiff's supervisor Frederica Dennis (hereinafter, "Dennis"), explicitly told Plaintiff that she was not to clock-in before the time that her shifts were scheduled to begin. Dennis made clear to Plaintiff that she would not be paid for the work performed prior to her

shifts.  On the rare occasions when Plaintiff clocked-in prior to her shifts, she was reprimanded by Dennis.

65.     Plaintiff was also reprimanded for staying at work after her shifts were scheduled to end.  Plaintiff would routinely clock-out at the time that she actually left and inform Dennis of these conditions.  This notice was made verbally and by means of electronic correspondence.  In response, Dennis consistently reprimanded Plaintiff.  This pattern regularly occurred whenever Plaintiff clocked out after 5:00 p.m.

66.     Dennis would also consistently confront Plaintiff and ask why she had to stay past 5:00 p.m.  Plaintiff made it clear to Dennis that her workload gave her no choice but to work after her shifts.  Regardless, Dennis would manually alter the time-clock to incorrectly reflect Plaintiff's departure time to be 5:00 p.m.   This was for the sole purpose of preventing overtime payments.  These unlawful practices transpired for the duration of Plaintiff's employment.[3]

67.     In addition, although Plaintiff was advised that she was to receive a break for lunch, office demands consistently precluded this supposed lunch break.   While Plaintiff was told that her lunch break would be for sixty (60) minutes each day, Plaintiff's workload constantly prevented her from taking her break.

68.     Due to the number of patients that were treated daily, Defendant demanded that there always be someone at the front desk to greet patients.  Due to understaffing, Plaintiff was typically the only person at Defendant's facility that could perform this role.  This required Plaintiff to consistently eat at her desk while continuing to work.

---

[3] Defendant's Director Christopher Joseph (hereinafter, "Joseph") was well aware of the unlawful employment practices to which Plaintiff was subjected.  Joseph knew of the improper policies implemented by Dennis.   Joseph failed to take any action on Plaintiff's behalf. Plaintiff, through her undersigned Counsel, is currently investigating the extent and scope of Defendant's unlawful practices.

69.     Due to her heavy workload, it was a regular occurrence for Plaintiff to work straight through her scheduled shift without the receipt of any break.  The many duties charged to Plaintiff required that she work non-stop.

70.     Although Plaintiff regularly failed to receive a break, Defendant still reduced Plaintiff's paychecks as a matter of course.   Regardless of whether Plaintiff received an uninterrupted break, a sixty (60) minute meal break was automatically deducted from her daily hours.   This further contributed to the denial of the overtime payments that Plaintiff justly earned.

71.     Regardless of how many hours that Plaintiff worked, she was only paid according to the schedule that she was given.  It was Defendant's consistent practice to only pay Plaintiff for no more than forty (40) hours of work each week.

72.     There is no bona fide dispute that Plaintiff is owed overtime wages for hours worked over forty (40) in a workweek.

73.     At no time did Plaintiff's duties include work that would make her exempt from the FLSA and/or MWHL provisions requiring that she be paid overtime wages.

74.     Plaintiff consistently worked in excess of forty (40) hours each week.  For the duration of her employment, Plaintiff's heavy workload required that she regularly work anywhere between fifty (50) to fifty-five (55) hours each week.

75.     Defendant was well aware of the overtime hours worked by Plaintiff.

76.     Defendant and/or its agents were regularly present in Plaintiff's work area.

77.     Defendant suffered or permitted Plaintiff to work more than forty (40) hours each week.  Defendant failed altogether to compensate Plaintiff for working these additional hours.

78.     In bad faith, Defendant withheld overtime wages owed to Plaintiff, even after she inquired about the wages missing from her paychecks.  Defendant ignored said inquiries and continued to deny Plaintiff proper wages for all hours worked.

79.     Due to sudden health concerns, on November 21, 2015, Plaintiff went out on temporary disability.  While Plaintiff was on disability, Defendant filled her position.  Defendant communicated the filling of Plaintiff's position to her via email, effectively terminating her employment.  This occurred on or around January 17, 2016.

80.     Thus, Plaintiff seeks her wages owed and all other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

81.     Defendant employed Plaintiff and other similarly situated employees to work as Administrative Coordinators and/or Care Center Specialists (hereinafter, collectively referred to as "Specialists").  Plaintiff and others similarly situated work or worked at Defendant's numerous locations across the state of Maryland.

82.     Although Plaintiff and these similarly situated employees may have held different titles, the nature of the work that they performed was substantially similar.  The primary difference between the Specialists' duties was simply the type of clinician that they were assigned to assist.  Regardless of the medical focus of the office in which they worked, all Specialists performed the duties described herein.

83.     Upon information and belief, these similarly situated employees were and are subject to the same unlawful practices described within this Complaint; Defendant paid these similarly situated employees for forty (40) hours of work each week, regardless of the number of hours actually worked.

84.     The FLSA requires employers to compensate non-exempt employees such as Plaintiff and others similarly situated overtime wages for all hours worked over forty (40) within a workweek.

85.     Defendant knew that Plaintiff and other similarly situated employees typically and customarily worked over forty (40) hours per week and suffered or permitted Plaintiff and others to work more than forty (40) hours per week without proper compensation.

86.     Defendant knew, or should have known, that Plaintiff and those similarly situated were entitled to overtime payments for hours worked in excess of forty (40) in a workweek.

87.     Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of herself and those similarly situated for the payment of wages owed for all hours worked at an overtime rate of not less than one and a half (1.5) times her regular rates of pay.

88.     Plaintiff consents to be a party Plaintiff in this matter; Plaintiff's consent form is attached to this Complaint as Exhibit A.  It is likely that other individuals will join Plaintiff during this litigation and file written consents to "opt in" to this collective action.

89.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

90.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

91.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

92.     Upon information and belief, others similarly situated will choose to join Plaintiff in this action and opt in to this lawsuit to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

93.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and other current and former employees that served as Administrative Coordinators and/or Care Center Specialists (hereinafter, collectively referred to as "Specialists") for Defendant, at Defendant's various locations throughout the state of Maryland from May 12, 2013 on, and were denied overtime wages owed to them under MWHL for hours worked over forty (40) in a single workweek.   Plaintiff is a member of the proposed class she seeks to represent.   Plaintiff and other Specialists performed the same duties and were subject to the same unlawful payment practices.

94.     *Numerosity:* The individuals in the Class are so numerous that joinder of all members is impracticable.    Although the precise number of such individuals is currently unknown, upon information and belief, the Class includes dozens of employees who are readily identifiable through KKI's pay records.   KKI employed a minimum of one (1) Specialist at each of its nineteen (19) office locations, often times employing several per office. Thus, numerosity exists.

95.     *Commonality:* There are questions of law and fact common to the Class.   Among the common questions of law and fact applicable to Plaintiff and the Class are:

      a.   Whether the Class is similarly situated because they all performed the same basic duties and were subject to KKI's common policy and practice of not paying them overtime;

      b.   Whether KKI employed the Class within the meaning of MWHL;

c. Whether KKI violated MWHL by failing to pay Plaintiff and the Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

d. Whether KKI's violations of MWHL were willful; and

e. Whether KKI is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interests, costs, and attorneys' fees.

96.     *Typicality:* Plaintiff's claims are typical of those of the Class.  Specifically, each and every Class member worked as Administrative Coordinators and/or Care Center Specialists for KKI in its various offices.  Each and every Class member was required to work well over forty (40) hours per workweek to keep up with Defendant's growing pool of patients.  Each of the Class members was paid for no more than forty (40) hours, regardless of the amount of hours worked in each workweek.  Each of the Class members had sixty (60) minutes deducted for lunch each day, regardless of whether or not they completely ceased working during that period.  As a result, due to KKI's failure to pay proper overtime premiums for all hours worked in excess of forty (40) hours per workweek, each and every Class member suffered the same harm.

97.     *Adequacy:* Plaintiff will fully and adequately protect the interests of the Class in that she seeks the same recovery as the Class, predicated upon the same violations of the law and the same damage theories.  Additionally, Plaintiff has retained Counsel who are qualified and experienced in the prosecution of statewide wage and hour claims.  Neither Plaintiff nor her Counsel have interests that are contrary to, or conflicting with, the interests of the Class.

98.     *Predominance:* The common issues of law and fact predominate over any individual issues. Each Class member's claim is controlled by Maryland's wage and hour

statutory scheme. Each Class member's claim is based on one (1) set of facts that center around Defendant's failure to pay overtime as required by MWHL. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount each Class member was paid and the amount of time each Class member worked.

99.     This action is maintainable as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class. This would establish incompatible standards of conduct for Defendant. The numerous adjudications that would be required to protect the individual interests of the Class members, if they were to pursue their claims separately, would constitute a substantial drain and burden on judicial resources.

100.     Accordingly, the Court should certify the proposed Class.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I.  Violation of the FLSA: Failure to Pay Overtime Wages

101.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

102.     Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

103.     As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiff for these additional hours.

104.    Defendant willfully and intentionally failed to compensate Plaintiff for the overtime wages she is owed.

105.    There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

106.    Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate her for all hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

### *Count II.    Violation of MWHL: Failure to Pay  Overtime  Wages*

107.    Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

108.    Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the employee's regular hourly rate; furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

109.    Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

110.    Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages she is owed.  There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

111.    Under MWHL, Plaintiff is entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

### *Count III. Violation of the MWPCL: Failure to Pay Wages Owed*

112.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

113.     Plaintiff is entitled to wages under the Maryland Wage Payment and Collection Law, Labor and Employment §§3-501, *et. seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

114.     In accordance with §3-505(a), Plaintiff has not received compensation from Defendant for all wages owed for work performed before the termination of her employment. This is specific to Defendant's failure to pay Plaintiff the overtime wages that she is entitled to.

115.     Defendant willfully and intentionally did not compensate Plaintiff for the wages owed to her and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation.

116.     Under the MWPCL, there is no bona fide dispute that Plaintiff is owed wages for work performed while employed by Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, prays for the following relief:

a)      In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b)      In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiff and all members of the proposed class;

c)      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who

are similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

d) Designating the named Plaintiff to act as Class Representative on behalf of all similarly situated employees for both the FLSA and Maryland State Law Classes;

e) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA;

f) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by MWHL;

g) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the MWPCL;

h) Judgment against Defendant and classifying its conduct as willful and not in good faith;

i) Judgment against Defendant and classifying Plaintiff and the Class as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff and those similarly situated, calculated at a rate that is not less than one and a half (1.5) times Plaintiff and others' regular hourly rate for all overtime hours worked;

k) An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff and those similarly situated, whichever is deemed just and equitable by this Honorable Court;

l) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

m) Leave to add additional Plaintiffs, opt-in or party, through the filing of consent forms; and

n) All further relief deemed just and equitable by this Honorable Court.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of her peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

/s/ *Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
Joseph E. Spicer, Esq. (27839)
jspicer@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*